📧 EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HENRY COUNTY, GEORGIA

**SUCV2025004135**
CL
DEC 30, 2025 11:49 AM

Sabriya Hill, Clerk
Henry County, Georgia

## IN THE SUPERIOR COURT OF HENRY COUNTY

### STATE OF GEORGIA

| | | |
|---|---|---|
| LEX CAPITAL, LLC, a Georgia | ) | |
| Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action File No. _____ |
| FIRST AMERICAN TITLE | ) | |
| INSURANCE COMPANY, | ) | |
| A Nebraska Corporation, | ) | |
| Defendant | ) | |

## COMPLAINT FOR BREACH OF CONTRACT

COMES NOW, LEX CAPITAL, LLC, a Georgia Limited Liability Company, PLAINTIFF, and hereby files this COMPLAINT FOR BREACH OF CONTRACT against FIRST AMERICAN TITLE INSURANCE COMPANY, A Nebraska Corporation, DEFENDANT, and shows the Court as follows:

1.

Defendant is a corporation organized and existing under the laws of the State of Nebraska. Defendant may be served with process by serving its registered agent in the State of Georgia, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

2.

On October 17, 2016, Plaintiff purchased an improved tract of land at 6941 Peachtree Industrial Boulevard, Peachtree Corners, GA 30092, hereinafter referred to as "the property." In connection with that acquisition and on the same date, Defendant sold Plaintiff an owner's policy of title insurance, insuring against loss or damage sustained or incurred by Plaintiff as a result of certain risks associated with the ownership of the property. A true and accurate copy of the described owner's policy of title insurance is attached hereto as Exhibit "A." The owner's policy of title insurance is hereinafter referred to as "the title policy."

3.

In selling the title policy to Plaintiff, Defendant purposefully performed acts and consummated a business transaction in the State of Georgia. This action arises from such acts and transaction. Defendant is therefore within the jurisdiction of the court pursuant to OCGA §9-10-91.

4.

Plaintiff's office and place of doing business is in Henry County, Georgia. The title policy was sold, issued and delivered to Plaintiff in Henry County, Georgia by Defendant's agent William A. Miller, P.C., whose office and place of business

was also in Henry County Georgia. Henry County is therefore a legally appropriate and correct venue for this action pursuant to OCGA §9-10-93.

5.

Subject to specifically stated exclusions and exceptions, the title policy insured against specified risks associated with ownership of the property, including, but not limited to: (a) title being vested other than as stated in the policy; (b) any defect in or lien or encumbrance on the title; and (c) any encroachment, encumbrance, variation, or adverse circumstance affecting the title that would be disclosed by an accurate survey of the land, specifically including encroachments onto the land of existing improvements located on adjoining land.

6.

In July of 2022, a large sinkhole developed on the property, blocking Plaintiff's access to it and the business premises located on it. Upon investigation. Plaintiff discovered that the sinkhole was caused by the failure of a system of underground pipes designed to convey under and through Plaintiff's property and adjoining tracts of land to a retention pond owned by Gwinnett County large amounts of stormwater runoff collected along Peachtree Industrial Boulevard. Plaintiff at this time has not determined who installed the system of underground pipes. However, examination of the title to the property reveals that the discharge of stormwater

runoff from Peachtree Industrial Boulevard onto Plaintiff's property and one or more adjoining tracts of land is authorized by an easement granted to the Georgia State Highway Department in 1966 by one of Plaintiff's predecessors in title. The described easement, which is recorded at Deed Book 260, Pages 402-404, Gwinnett County records, was not disclosed in the title report prepared by Defendant's agent at the time Plaintiff purchased the property, is not set out as an exception to the guaranty of fee simple title in the title policy, and is not excluded from coverage by the terms of the policy.

7.

On September 27, 2022, Plaintiff sent written notice to Defendant of the existence of the sinkhole, the system of underground pipes, and the undisclosed drainage easement described in paragraph 6, and demanded that Defendant honor its obligations under the title policy. Defendant initially denied the claim, but after reconsideration acknowledged in a letter dated October 31, 2022 that coverage is afforded for the drainage easement granted to the Georgia State Highway Department. A true and accurate copy of Defendant's October 31, 2022 letter is attached as Exhibit "B."

8.

The title policy gives Defendant the right to elect from specified remedies to satisfy its obligations under the policy, including legal or other action to cure or remove a title defect or encumbrance, or payment of Plaintiff's monetary loss. In its letter of October 31, 2022, Defendant stated it would pay the monetary loss, which it contends is defined by the title policy as the difference between the value of the title without the drainage easement and the value of the title subject to the drainage easement. Defendant thereafter obtained a diminution in value appraisal and provided a copy of it to Plaintiff. However, the appraisal grossly underestimated the diminution in value of the property caused by the drainage easement; and Defendant since has failed, despite a written, time-limited demand from Plaintiff, to pay the actual diminution in value of the property caused by that easement.

9.

Defendant has refused to honor its obligations pursuant to the title policy and has breached its contract with Plaintiff. Plaintiff is entitled to a judgment against Defendant for breach of contract and damages for the actual diminution in value of Plaintiff's property caused by the Georgia State Highway Department drainage easement.

10.

In addition to breaching its contract with Plaintiff, Defendant's refusal to pay the loss covered by the title policy was in bad faith.  More than sixty days have passed since Plaintiff's demand for payment was made, and Defendant is liable to Plaintiff, in addition to the damages stated above, for bad faith damages of not more than fifty percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer, pursuant to O.C.G.A. § 33-4-6.

WHEREFORE, Plaintiff demands:

(a) that a summons be issued requiring Defendant to answer this complaint within the time permitted by law;

(b) that process be served on Defendant in a manner authorized by law;

(c) trial by jury;

(d) a judgment against Defendant for such sum as may be established by the evidence;

(e) a judgment against Defendant for bad faith damages, pursuant to O.C.G.A. § 33-4-6;

(f) a judgment for the costs of this action; and

(g) such additional relief as may be appropriate.

Respectfully submitted,


/s/Andrew C. Ausband//
Andrew C. Ausband
Ga. Bar No. 028602

*Attorney for Plaintiff*

Ausband & Dumont
825 Fairways Court, Suite 300
Stockbridge, GA 30281
(678) 593-3000
andyausband@ausbandlaw.com

## EXHIBIT A

 **First American Title™** | **Owner's Policy of Title Insurance**

ISSUED BY

**First American Title Insurance Company**

**Owner's Policy** | POLICY NUMBER
**5011413-0131078e**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

**COVERED RISKS**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, **FIRST AMERICAN TITLE INSURANCE COMPANY**, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

(Covered Risks Continued on Page 2)

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

For Reference:

File #: 16-2266

Issued By:

**William A. Miller, P.C.**
William A. Miller, P.C., 2330 Patrick Henry Parkway,
Suite 350
McDonough, GA 30253

(This Policy is valid only when Schedules A and B are attached)

This Jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

ALTA Owner's Policy of Title Insurance (6-17-06)
Georgia

Policy #: 5011413-0131078e

COVERED RISKS (Continued)

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
   (b) because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
       (i) to be timely, or
       (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
       (i) the occupancy, use, or enjoyment of the Land;
       (ii) the character, dimensions, or location of any improvement erected on the Land;
       (iii) the subdivision of land; or
       (iv) environmental protection;
       or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

Policy #: 5011413-0131078e

## CONDITIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

   (i) The term "Insured" also includes

     (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

     (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

     (C) successors to an Insured by its conversion to another kind of Entity;

     (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

       (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

       (2) if the grantee wholly owns the named Insured,

       (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

       (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

   (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

### 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

### 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or

Policy #: _5011413-0131078e_____                                                                                    ─── CONDITIONS (Continued) ───

damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent

Policy #: 5011413-0131078e— -- --- — - - - - - — - - —    CONDITIONS (Continued)

manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION (DOES NOT APPLY IN GEORGIA)

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 17. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.

## First American Title Insurance Company

### SCHEDULE A

FIRST AMERICAN TITLE INSURANCE COMPANY
1 FIRST AMERICAN WAY
SANTA ANA, CALIFORNIA 92707

Agent's File No: **16-2266**

Policy No.: **FA-5011413-0131078E**

Address Reference:    **6941 PEACHTREE INDUSTRIAL BLVD
NORCROSS, GA, GA**

Date of Policy: @ OCTOBER 17, 2016

Amount of Insurance **$1,375,000.00**

1.  Name of Insured:
    **LEX CAPITAL, LLC**

2.  The estate or interest in the Land that is insured by this policy is: **Fee Simple**

3.  Title is vested in:

    **LEX CAPITAL, LLC**

4.  The land referred to in this Policy is described as follows:

See Schedule A attached hereto and made a part hereof:

WILLIAM A. MILLER, P.C.

By: _____
Authorized Signatory

FATIC-516
Schedule A
ALTA Owner's Policy (6-17-06)

*First American Title Insurance Company*

## SCHEDULE A (Continued)

Agent's File No.: 16-2266

Policy No.: FA-5011413-0131078E

All that tract or parcel of land lying and being in Land Lot 277 of the 6th District of Gwinnett County, Georgia being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at an iron pin found at the intersection of the northwesterly right-of-way line of Peachtree Industrial Boulevard (Georgia Highway No. 141) (right-of-way varies) with the northeasterly right-of-way line of Land Lot 277; thence run southwesterly along the northwesterly right-of-way line of Peachtree Industrial Boulevard a distance of 105.0 feet to an iron pin found, being the True Point of Beginning; from said True Point of Beginning, thus established, thence continuing along said right-of-way line of Peachtree Industrial Boulevard south 55 degrees 18 minutes 55 seconds west a distance of 4.40 feet to a point; thence continuing along said right-of-way line south 42 degrees 22 minutes 57 seconds west a distance of 37.20 feet to an iron pin set; thence leaving said right-of-way line of Peachtree Industrial Boulevard and running north 31 degrees 06 minutes 50 seconds west a distance of 230.0 feet to an iron pin set; thence south 58 degrees 53 minutes 03 seconds west a distance of 51.20 feet to an iron pin set; thence north 31 degrees 06 minutes 50 seconds west a distance of 188.40 feet to an iron pin set; thence south 58 degrees 53 minutes 10 seconds west a distance of 60.00 feet to an iron pin set; thence north 31 degrees 06 minutes 50 seconds west a distance of 93.00 feet to an iron pin set; thence north 58 degrees 53 minutes 10 seconds east a distance of 60.00 feet to an iron pin set; thence north 31 degrees 06 minutes 50 seconds west a distance of 19.00 feet to an iron pin set; thence north 55 degrees 19 minutes 31 seconds east a distance of 65.50 feet to an iron pin set; thence north 31 degrees 40 minutes 38 seconds east a distance of 148.07 feet to an iron pin found; thence south 31 degrees 06 minutes 50 seconds east a distance of 409.30 feet to an iron pin found; thence south 58 degrees 38 minutes 55 seconds west a distance of 105.80 feet to an iron pin set; thence south 31 degrees 07 minutes 06 seconds east a distance of 181.60 feet to an iron pin found located on the northwesterly right-of-way line of Peachtree Industrial Boulevard being the True Point of Beginning; said property containing 1.90 acres according to plat prepared for Anheuser Marketing, Inc., Colonial Bank and Commonwealth Land Title Insurance Company by Solar Land Surveying Company, John W. Stanzilis, R.L.S. No. 2109, dated June 9, 1997.

TOGETHER WITH the easement rights arising out of that certain Easement dated August 31, 1982, between Clardy Auto Air Parts, Inc. and Moriarty Sales Co., Inc., recorded in Deed Book 2441, Page 318, Gwinnett County, Georgia Records.

*First American Title Insurance Company*

## SCHEDULE B
## EXCEPTIONS FROM COVERAGE

Agent's File No.: **16-2266**                              Policy No.: **FA-5011413-0131078E**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) that arise by reason of:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrances, violations, variations, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  Any mineral or mineral rights leased, granted or retained by current or prior owners.

6.  Taxes and assessments for the year 2016 and subsequent years, not yet due and payable.

7.  **Water Line Easement recorded in Deed Book 2426, Page 620, Gwinnett County, Georgia records.**

8.  **Driveway Easement recorded in Deed Book 2441, Page 318, Gwinnett County, Georgia records.**

9.  **Easement for Ingress & Egress recorded in Deed Book 2425, Page 635, Gwinnett County, Georgia records.**

BK54681 PG0477

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

2016 OCT 25  PM 2:00

RICHARD ALEXANDER, CLERK

Return To:
William A. Miller, Esq.
2230 Patrick Henry Pkwy, Ste 350
McDonough, GA  30253
File #16-2266

PT-61# 007-2016-028608
GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$
RICHARD T. ALEXANDER, JR. CLERK OF
SUPERIOR COURT

## QUIT CLAIM DEED

STATE OF GEORGIA
COUNTY OF HENRY

THIS DEED ("Deed") made this the 17th day of OCTOBER, 2016, by **ANHEUSER MARKETING, INC.**, a Delaware Corporation, as party of the first part, hereinafter called Grantor, and **LEX CAPITAL, LLC**, a Georgia limited liability company hereinafter called Grantee (the words "Grantors" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

### WITNESSETH:

That Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, cash in hand paid at and before the sealing and delivery of these presents, the receipt and sufficiency of which are hereby acknowledged, by these presents does grant, bargain, sell, alien, convey, remise, release and forever quit-claim to the Grantee, their heirs and assigns, all the right, title, interest, claim or demand which the Grantor, either jointly or individually, have or may have had in and to the following described real property (the "Property"):

### SEE ATTACHED EXHIBIT "A"

TO HAVE AND TO HOLD the Property with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, unto the Grantee, their successors, heirs and assigns, so that neither the said Grantors nor their successors, nor any other person claiming under them shall at any time, claim or demand any right, title or interest to the Property or its appurtenances.

0099968

BK54681 PG0478 *PAGE 2 OF QUIT CLAIM DEED*

*Property Land lot 277*
*6th Dist. of Gwinett Co.*

IN WITNESS WHEREOF, Grantor has executed this DEED as of the day and year first above written.

GRANTOR:
**ANHEUSER MARKETING, INC.**
**A Delaware Corporation**

Signed, sealed and delivered in the presence of:

_____
Witness

By:_____ (SEAL)
L. RICHARD ANHEUSER, PRESIDENT

_____
Notary Public
My commission expires:
[Notary Seal]

SUE HOWARTH
Notary Public, Georgia
Fulton County
My Commission Expires
June 24, 2017

BK5468 1 PG0479

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 277 of the 6th District of Gwinnett County, Georgia being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at an iron pin found at the intersection of the northwesterly right-of-way line of Peachtree Industrial Boulevard (Georgia Highway No. 141) (right-of-way varies) with the northeasterly line of Land Lot 277; thence run southwesterly along the northwesterly right-of-way line of Peachtree Industrial Boulevard a distance of 105.0 feet to an iron pin found, being the True Point of Beginning; from said True Point of Beginning, thus established, thence continuing along said right-of-way line of Peachtree Industrial Boulevard south 55 degrees 18 minutes 55 seconds west a distance of 4.40 feet to a point; thence continuing along said right-of-way line south 42 degrees 22 minutes 57 seconds west a distance of 37.20 feet to an iron pin set; thence leaving said right-of-way line of Peachtree Industrial Boulevard and running north 31 degrees 06 minutes 50 seconds west a distance of 230.0 feet to an iron pin set; thence south 58 degrees 53 minutes 03 seconds west a distance of 51.20 feet to an iron pin set; thence north 31 degrees 06 minutes 50 seconds west a distance of 188.40 feet to an iron pin set; thence south 58 degrees 53 minutes 10 seconds west a distance of 60.00 feet to an iron pin set; thence north 31 degrees 06 minutes 50 seconds west a distance of 93.00 feet to an iron pin set; thence north 58 degrees 53 minutes 10 seconds east a distance of 60.00 feet to an iron pin set; thence north 31 degrees 06 minutes 50 seconds west a distance of 19.00 feet to an iron pin set; thence north 55 degrees 19 minutes 31 seconds east a distance of 65.50 feet to an iron pin set; thence north 31 degrees 40 minutes 38 seconds east a distance of 148.07 feet to an iron pin found; thence south 31 degrees 06 minutes 50 seconds east a distance of 409.30 feet to an iron pin found; thence south 58 degrees 38 minutes 55 seconds west a distance of 105.80 feet to an iron pin set; thence south 31 degrees 07 minutes 06 seconds east a distance of 181.60 feet to an iron pin found located on the northwesterly right-of-way line of Peachtree Industrial Boulevard being the True Point of Beginning; said property containing 1.90 acres according to plat prepared for Anheuser Marketing, Inc., Colonial Bank and Commonwealth Land Title Insurance Company by Solar Land Surveying Company, John W. Stanzilis, R.L.S. No. 2109, dated June 9, 1997.

TOGETHER WITH the easement rights arising out of that certain Easement dated August 31, 1982, between Clardy Auto Air Parts, Inc. and Moriarty Sales Co., Inc., recorded in Deed Book 2441, Page 318, Gwinnett County, Georgia Records.

BK54681 PG0472

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

2016 OCT 25 PM 2:00

RICHARD ALEXANDER. CLERK

After recording, please return to:
William A. Miller, P.C.
2330 Patrick Henry Pkwy, Suite 350
McDonough, Georgia 30253
FILE #16-2266

**STATE OF GEORGIA**
**COUNTY OF HENRY**

PT-61 #067-2016-02808
GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$ 1,375.00
RICHARD T. ALEXANDER, JR. CLERK OF
SUPERIOR COURT

### LIMITED WARRANTY DEED

      **THIS LIMITED WARRANTY DEED** is made this 17TH day of OCTOBER, 2016, by and between ANHEUSER MARKETING, INC. a Delaware Corporation (hereinafter called **"Grantor"**); and LEX CAPITAL, LLC a Georgia Limited Liability Company (hereinafter called **"Grantee"**). The words "Grantor" and "Grantee" include the neuter, masculine and feminine genders, and the singular and the plural.

### W I T N E S S E T H :

      **FOR AND IN CONSIDERATION** of the sum of Ten Dollars ($10.00) in hand paid to Grantor by Grantee at and before the execution, sealing and delivery hereof, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto Grantee, in fee simple, all that tract or parcel of land lying and being in GWINNETT County, Georgia, being more particularly described on Exhibit "A", attached hereto and incorporated herein by reference, together with all and singular the buildings, improvements thereupon erected, and all an every the ways, easements, rights, privileges and appurtenances to the same belonging or in any way appertaining and all the estate, right, title, interest and claim, either at law or equity, or otherwise however, of the Grantor of, in, to, or out of the property

      **TO HAVE AND TO HOLD** the property for the use and benefit of Grantees, his heirs, personal representatives and assigns, in fee simple.

0099967 -71

BK54681 PG0473

GRANTOR SHALL WARRANT and forever defend the right and title to said tract or parcel of land unto Grantee, and the successors, legal representatives and assigns of Grantee, against the claims of all persons claiming by, through or under Grantor, but not otherwise. Title to the Property is subject to those matters of public record as of the date hereof, as shown among the current public records of GWINNETT County, Georgia.

IN WITNESS WHEREOF, Grantor has caused its duly authorized agent to execute this indenture, and to deliver this indenture to Grantee, all the day and year first written above.

Signed, sealed and delivered in the presence of:

_Sherry A. Cole_
Unofficial Witness

_Sue Howarth_
Notary Public

My Commission Expires:

SUE HOWARTH
Notary Public, Georgia
Fulton County
My Commission Expires
June 24, 2017

(NOTARIAL SEAL)

GRANTOR:
ANHEUSER MARKETING, INC.
a Delaware Corporation

By: _____ (SEAL)
L. RICHARD ANHEUSER, PRESIDENT

WD

BK54681 PG0474

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 277 of the 6th District of Gwinnett County, Georgia, as shown on survey for Moriarty Sales Company, Inc., prepared by Georgia Land Surveying Co., Inc., dated June 1, 1984, bearing the seal of Josh L. Lewis, III, Georgia Registered Land Surveyor No. 1751 which survey is incorporated herein by reference as is fully set forth herein and which property is more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING, begin at an iron pin found at the intersection of the northwesterly right-of-way line of Peachtree Industrial Boulevard (Georgia Highway No. 141) with the northeasterly line of Land Lot 277; thence run southwesterly along the northwesterly right-of-way line of Peachtree Industrial Boulevard a distance of 105.0 feet to an iron pin placed at a point being the TRUE POINT OF BEGINNING; from said true point of beginning as thus established, thence run southwesterly along the northwesterly right-of-way line of Peachtree Industrial Boulevard south 55 degrees 18 minutes 55 seconds west a distance of 4.40 feet to an iron pin placed; thence run south 42 degrees 22 minutes 57 seconds west a distance of 37.2 feet to a nail set in an asphalt drive; thence run north 31 degrees 06 minutes 51 seconds west a distance of 230.0 feet to a nail set in an asphalt drive; thence run south 58 degrees 53 minutes 03 seconds west and a distance of 51.2 feet to an iron pin found; thence run north 31 degrees 06 minutes 50 seconds west a distance of 177.40 feet to an iron pin placed; thence run south 58 degrees 53 minutes 10 seconds west a distance of 60.0 feet to an iron pin placed; thence run north 31 degrees 06 minutes 50 seconds west a distance of 93.0 feet to an iron pin placed; thence run north 58 degrees 53 minutes 10 seconds east a distance of 60 feet to an iron pin placed; thence run north 31 degrees 06 minutes 50 seconds west a distance of 30 feet to an iron pin found; thence run north 55 degrees 19 minutes 31 seconds east a distance of 65.50 feet to an iron pin found; thence run north 31 degrees 40 minutes 38 seconds east a distance of 148.07 feet to an iron pin found on the northeasterly lot line of Land Lot 277; thence run south 31 degrees 06 minutes 50 seconds east along the northeasterly line of Land Lot 277 a distance of 409.30 feet to an iron pin found; thence run south 58 degrees 38 minutes 55 seconds west a distance of 105.8 feet to an iron pin placed; thence run south 31 degrees 07 minutes 06 seconds east a distance of 181.6 feet to an iron pin placed on the northwesterly right-of-way line of Peachtree Industrial Boulevard and the TRUE POINT OF BEGINNING, being the same property as shown on survey for "HARRIS BEAUTY SUPPLY CO., INC." prepared by Alvin E. Vaughn & Associates, Inc., dated June 5, 1987, as revised on June 19, 1987.

Exhibit "A" Page 1 of 3

BK54681 PG0475

TOGETHER WITH:

ALL THAT LOT, TRACT OR PARCEL OF LAND situate, lying and being in
Land Lot numbered 277 of the 6th District, Gwinnett County,
Georgia, being particularly described as follows:

To find the true point of beginning, begin at an iron pin found at
the intersection of the northwesterly right of way line of
Peachtree Industrial Boulevard (Georgia Highway #141) with the
northeasterly line of Land Lot 277; thence run southwesterly along
the northwesterly right of way line of Peachtree Industrial
Boulevard a distance of 109.40 feet to a point; continuing thence
along the northwesterly line of the aforesaid right of way of
Peachtree Industrial Boulevard South 42 degrees 01 minutes 07
seconds West a distance of 37.20 feet to a point; thence leaving
the right of way of Peachtree Industrial Boulevard running North 31
degrees 06 minutes 16 seconds West a distance of 230.00 feet to a
point; running thence South 58 degrees 53 minutes 44 seconds West
a distance of 51.20 feet to an iron pin set; running thence North
31 degrees 06 minutes 16 seconds West a distance of 270.4 feet to
a point WHICH POINT IS THE POINT OF BEGINNING OF THE PROPERTY
DESCRIBED HEREIN; thence from said point of beginning running South
58 degrees 53 minutes 44 seconds West a distance of 60.00 feet to
a point; running thence North 31 degrees 06 minute 16 seconds West
a distance of 11 feet to a point; running thence North 58 degrees
53 minutes 44 seconds East a distance of 60.00 feet to a point;
running thence South 31 degrees 06 minutes 16 seconds East a
distance of 11.0 feet to the point of beginning, said property
being shown on that certain survey for D. T. Burdette and Southern
National Bank, dated April 17, 1985, last revised May 17, 1989, by
Jick A. Paye, G.R.L.S. No. 1894.

LESS AND EXCEPT:

ALL THAT LOT, TRACT OR PARCEL OF LAND situate, lying and being in
Land Lot numbered 277 of the 6th District, Gwinnett County,
Georgia, being particularly described as follows:

To find the true point of beginning, begin at an iron pin found at
the intersection of the northwesterly right of way line of
Peachtree Industrial Boulevard (Georgia Highway #141) with the
northeasterly line of Land Lot 277; thence run southwesterly along
the northwesterly right of way line of Peachtree Industrial
Boulevard a distance of 109.40 feet to a point; continuing thence
along the northwesterly line of the aforesaid right of way of
Peachtree Industrial Boulevard South 42 degrees 01 minutes 07
seconds West a distance of 37.20 feet to a point; thence leaving
the right of way of Peachtree Industrial Boulevard running North 31
degrees 06 minutes 16 seconds West a distance of 230.00 feet to a
point; running thence South 58 degrees 53 minutes 44 seconds West
a distance of 51.20 feet to an iron pin set; running thence North

Exhibit "A" Page 2 of 3

BK54681 PG0476

31 degrees 06 minutes 16 seconds West a distance of 177.40 feet to a point WHICH POINT IS THE POINT OF BEGINNING OF THE PROPERTY DESCRIBED HEREIN; thence from said point of beginning running South 58 degrees 53 minutes 44 seconds West a distance of 60.00 feet to a point; running thence North 31 degrees 06 minutes 16 seconds West a distance of 11 feet to a point; running thence North 58 degrees 53 minutes 44 seconds East a distance of 60.00 feet to a point; running thence South 31 degrees 06 minutes 16 seconds East a distance of 11.0 feet to the point of beginning, said property being shown on that certain survey for D. T. Burdette and Southern National Bank, dated April 17, 1985, last revised May 17, 1989, by Jick A. Paye, G.R.L.S. No. 1894.

Exhibit "A" Page 3 of 3

**EXHIBIT B**

*First American*
*Title Insurance Company*
CLAIMS SERVICES

EASTERN CLAIMS

Direct Dial: 813-466-3872
Fax: 866-253-3607
Email: chmccall@firstam.com

October 31, 2022

Sent Via Email

Wade Crumbley, Esq.
wadetheelder@gmail.com

> Claim No.:    GA-2209406461
> Policy No.:   5011413-0131078E
> Insured:      Lex Capital, LLC
> Property:     6941 Peachtree Industrial Blvd., Norcross, GA 30092

Dear Mr. Crumbley:

You have submitted a supplemental claim to First American Title Insurance Company (the "Company") to the one previously submitted on behalf of Lex Capital, LLC ("Insured"). The Company previously rendered a coverage determination on the original claim submitted by Insured by letter dated October 20, 2022 (the "Prior Coverage Determination"). The Company adopts, for purposes of this letter, the facts and definitions set forth in the Prior Coverage Determination (to the extent applicable to the supplemental claim) in this letter. As discussed below, the Company has determined that coverage is afforded for the supplemental claim subject to the terms and conditions of the above-referenced policy.

Insured has submitted the supplemental claim due to an unexcepted easement for drainage recorded in Deed Book 260, page 402, of the official records of Gwinnett County, Georgia. This easement encumbers a portion of the Property, but does not appear to be connected to the pipe that is the subject of the prior claim by the Insured.

The Company has determined that the supplemental claim falls within the Policy's insuring provisions. Please note that the Company has options to resolve the supplemental claim under the Policy. Those options include, but are not limited to, the option to pay or tender the amount of insurance or to pay or settle with either the insured or a third party. In that regard, I direct your attention to Paragraph 8(a) of the Policy's Conditions, which states:

### CONDITIONS

**8.    DETERMINATION AND EXTENT OF LIABILITY**
*This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.*

> (a) *The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of*
> (i) *the Amount of Insurance; or,*
> (ii) *the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.*

Accordingly, the Company will begin the process of determining the difference between the value of the title to the Property, as insured, and the value of the title to the Property subject to the easement. Additionally, the Company may take any action it deems appropriate to resolve the claim in order to reduce loss or damage. The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act that, in its opinion, may be necessary or desirable to establish the title, as insured, or to prevent or reduce loss or damage to you.

Please be advised that the Company may continue its independent investigation of this matter and maintains the right to assert any defense, including a defense that is not apparent at this time and becomes apparent during its continuing investigation of the above-referenced claim. The Company maintains all rights and defenses that it has under the Policy or under any applicable legal theory or principle.

Please also note that additional terms and conditions of the Policy may be applicable to this claim. Reference in this letter to any particular provision of the Policy, therefore, shall not be construed as a waiver of any other term or provision. The Company retains the right to supplement this letter.

If, during the handling of the claim, you receive additional information related to the claim, please forward the information to me as soon as possible. The Company appreciates your anticipated cooperation, pursuant to the Conditions set forth in the Policy.

Very truly yours,

Charles S. McCall
Senior Claims Counsel
Eastern Claims Center